**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------X

In re:

PAUL'S WELDING SPRING WORKS, INC.,

Debtor.

---------------------------------------------------X

**[FOR PUBLICATION]**

Chapter 11
Case No. 26-12155 (SAB)

**DECISION AND ORDER DENYING MOTION FOR STAY PENDING APPEAL**

Paul's Welding Spring Works, Inc. ("Paul's Welding" or the "Debtor") filed this Motion for Stay Pending Appeal on October 8, 2026 (ECF No. 18, the "Motion for Stay Pending Appeal"), seeking a stay pending the appeal of this Court's Order, dated October 5, 2026 (ECF No. 16, the "October 5 Order"), which granted relief from the automatic stay to allow the sale of commercial real property located at 1660 East 233rd Street, Bronx, New York (the "Commercial Marital Property"). The Court issued the October 5 Order upon notice and a hearing on October 5, 2026 (the "Lift-Stay Hearing"). The Court stated its reasons for granting relief from the automatic stay on the record of the Lift-Stay Hearing and later issued a written decision further clarifying its holding in the form of a Modified Bench Ruling (ECF No. 20).[1] In support of the Motion for Stay Pending Appeal, the Debtor submitted a Memorandum of Law (ECF No. 18-1) and a Declaration of Michael Ruggiero (ECF No. 18-2). In response, Charles A. D'Agostino, the receiver appointed by the Supreme Court of the State of New York to sell the Commercial Marital Property (the "Receiver"), filed a Memorandum of Law in opposition to the Motion for Stay Pending Appeal

[1] The written modified bench ruling memorialized and further clarified the Court's bench ruling that was read into the record on October 5, 2026. While the substance of the bench ruling remained the same, the written modified bench ruling provided a more detailed and streamlined recitation of salient facts, the procedural history in this and related matters, and the analysis conducted by the Court. Nothing in the written modified bench ruling altered the factual or legal grounds for the Court's ruling. The modified bench ruling was prepared because, among other things, no party had yet ordered a transcript in this matter and therefore there was no written transcript of the prior proceedings before this Court available to the parties (or the Court).

(ECF No. 23). Maria Ruggiero, a creditor and the former spouse of the Debtor's principal who moved for relief from the automatic stay, did not file any opposition to the instant motion.

At base, Paul's Welding seeks to deploy the bankruptcy code's automatic stay to halt a sale of real property (the Commercial Marital Property) as ordered by the New York State Supreme Court on May 26, 2026, to a buyer who signed a sale contract prior to the Debtor's bankruptcy, so that Paul's Welding can instead itself refinance the Commercial Marital Property. Notably, Paul's Welding has no currently available financing source, submitted an unsuccessful bid to buy the property from the receiver who was ordered to sell it and, crucially, holds zero equity in the property. Further, the Commercial Marital Property is not property of the Paul's Welding's estate and therefore cannot be deployed as an asset for the benefit of that Debtor. However, even if the Commercial Marital Property were property of the Debtor's estate, among other things, given the history of legal proceedings in connection with the divorce decree that has resulted in a receiver-supervised, court-ordered sale of the Commercial Marital Property, and the fact that the sale itself is near consummation (a sale contract having been executed), cause exists to lift or modify the automatic stay in this instance. Any disruption to the business presently operated in the Commercial Marital Property (or potential displacement, even on a permanent basis) was previously fully considered by the New York State Supreme Court, which nevertheless ordered the sale of the property, citing among other reasons "constant attempts to thwart the Court's ability to value" the property by the principal of the Debtor (Michael Ruggiero). For these reasons, and those set forth below, the Motion for Stay Pending Appeal is DENIED.

## **BACKGROUND**

The facts set forth below are excerpted from the Court's Modified Bench Ruling (ECF

No. 20).

**The Parties**

Paul's Welding Spring Works, Inc. (the "Debtor" or "Paul's Welding") is an automotive welding and spring works business operating at 1660 East 233rd Street, Bronx, New York (the "Commercial Marital Property"). ECF No. 10 ¶ 3 (Local Rule 1007-2 Affidavit). Michael Ruggiero is the Debtor's principal and sole shareholder, *id.* ¶ 4, and is himself also a debtor in a separate chapter 11 matter, *see* Case No. 26-11536 (the "Ruggiero Bankruptcy"). Maria Ruggiero is the former spouse of Michael Ruggiero, who is entitled under the Judgment of Divorce to 70% of the net proceeds from a sale of the Commercial Marital Property. *See* ECF No. 5-1 at 75 (Judgment of Divorce).

**Divorce Proceedings**

On December 22, 2022, Ms. Ruggiero commenced an action for divorce against Mr. Ruggiero in the Supreme Court of the State of New York, Westchester County. Following a six-month trial, a Judgment of Divorce was entered on the Supreme Court docket on May 26, 2026. *Ruggiero v. Ruggiero*, Index No. 69628/2022, NYSCEF Nos. 586, 587; *see also* ECF No. 5-1 at 69–81 (Judgment of Divorce and Notice of Entry).

In addition to dissolving the marriage, the Judgment of Divorce ordered the sale of the Commercial Marital Property by a receiver, with 70% of net proceeds distributed to Ms. Ruggiero and the remaining 30% to Mr. Ruggiero. ECF No. 5-1 at 75 (Judgment of Divorce). The Supreme Court provided additional reasoning and context in its Decision After Trial. *See generally id.* at 5–65 (Decision After Trial). Two findings are particularly relevant to the Motion for Stay Pending Appeal. First, the Decision After Trial "***direct[ed] the sale***" of the Commercial Marital Property "to a neutral third-party buyer through a Court-appointed Receiver" as a result of what

the Supreme Court observed to be Mr. Ruggiero's "***constant attempts to thwart the Court's ability to value***" the property. *Id.* at 41–43 (emphasis added). The Supreme Court explained, "The continued appointment of a Receiver to effectuate the sale is necessitated by [Mr. Ruggiero's] demonstrated pattern of obstruction. He refused to pay for the neutral appraisal, obstructed an updated appraisal, and attempted to covertly and fraudulently transfer the property out of the marital estate by recording a backdated deed purporting to place the property in a trust." *Id.* Second, the Decision After Trial considered Mr. Ruggiero's contention that the sale of the Commercial Marital Property "would ***destroy*** the [Paul's Welding] business." *Id.* at 43 (emphasis added). The Supreme Court specifically acknowledged that a sale of the Commercial Marital Property would "likely" require Mr. Ruggiero "to temporarily suspend his business, his sole source of income," but nevertheless ordered the Commercial Marital Property to be sold, even going so far as to observe that, "at his age, there is little likelihood of finding comparable new employment" for Mr. Ruggiero. *Id.* at 55.

**The Ruggiero Bankruptcy**

Shortly after the Supreme Court issued its Decision After Trial, Mr. Ruggiero filed an individual chapter 11 petition in this Court on June 29, 2026 (Case No. 26-11536, the "Ruggiero Bankruptcy"). In the Ruggiero Bankruptcy, Ms. Ruggiero moved for stay relief to sell the marital residence in accordance with the Judgment of Divorce on July 14, 2026. Chief Judge Martin Glenn, who was the judge assigned to Mr. Ruggiero's case before his retirement, granted the relief requested on August 4, 2026. Case No. 26-11536, ECF Nos. 17, 20 at 1 (Order Granting Relief from Automatic Stay). Chief Judge Glenn also declined to extend the automatic stay to the Commercial Marital Property in Mr. Ruggiero's personal bankruptcy, reasoning: "the commercial real property located at 1660 East 233rd Street, Bronx, New York . . . is not property of [Mr.

Ruggiero's] estate and as such, the automatic stay does not apply to the sale . . . ." *Id.* at 2. The Court further clarified that "nothing in this Order shall inhibit Charles A. D'Agostino, the Divorce Court Appointed Receiver of the Bronx Property, from continuing with actions in accordance with the terms and conditions of the Judgment of Divorce and any other order from the Divorce Court." *Id.* Those orders were not appealed and no stay of their enforcement was sought; therefore, they are binding on Mr. Ruggiero and prohibit him from halting the sale of the Commercial Marital Property directly through his personal bankruptcy.

**The Fraudulent Transfer of Title for the Commercial Marital Property**

Shortly after Chief Judge Glenn's order issued, Mr. Ruggiero caused Paul's Welding to transfer the Commercial Marital Property into a trust. ECF No. 5-1 at 39 (Decision After Trial). But the Supreme Court soon voided the purported transfer to the trust, concluding that Mr. Ruggiero's actions constituted a "fraudulent attempt to transfer the property into a sham trust." ECF No. 7-1 (Order Affirming Title); ECF No. 5-1 at 39 (Decision After Trial). The Receiver then applied to the Supreme Court to have title to the Commercial Marital Property put back into the Debtor's name (Paul's Welding) in order to "avoid title issues" from having the title held by an entity other than the entity named in the Judgment of Divorce. *Id.* Title was transferred back into the Debtor's name on August 28, 2026. ECF No. 7-1 (Order Affirming Title).

At about the same time, on August 26, 2026, Mr. Ruggiero filed an order to show cause with the Supreme Court, asking the court to allow him to tender $462,687.26 to Ms. Ruggiero in lieu of the forced sale of the Commercial Marital Property. ECF No. 5-1 at 85–86 (Order to Show Cause), 88–89 (Affirmation of Michael Ruggiero in Support of Order to Show Cause). In support of this request, Mr. Ruggiero argued that removing him from the premises would "***destroy***" him financially and that the allocation of tax liability was inequitable. *Id.* at 88–89, 90–91 (emphasis

added). The Supreme Court ***declined*** to sign the order to show cause on August 27, 2026, characterizing the request for relief as a further "***delaying tactic***" and noting "an extensive history of dilatory maneuvers, obfuscation, and needless litigation" on the part of Mr. Ruggiero. ECF No. 5-1 at 102–03 (Decision and Order Declining to Sign Order to Show Cause) (emphasis added).

**The Paul's Welding Bankruptcy**

On September 10, 2026, Mr. Ruggiero caused Paul's Welding to file a non-individual chapter 11 petition in this Court. ECF No. 1 (Petition). One week later, Ms. Ruggiero filed a motion for relief from the automatic stay (ECF No. 5), in which she sought an order permitting the Receiver to continue with the sale process of the Commercial Marital Property. The Debtor filed an Opposition (ECF No. 7) and accompanying Declaration of Michael Ruggiero (ECF No. 8). The Court conducted the Lift-Stay Hearing on October 5, 2026, and issued the October 5 Order later that same day, granting relief from the automatic stay but declining to award attorneys' fees and costs. The Court also waived the fourteen-day stay of effectiveness of the October 5 Order under Bankruptcy Rule 4004(a)(4), to which the Debtor raised no objection.

**Subsequent Procedural History**

Paul's Welding filed a Notice of Appeal (ECF No. 17) on October 6, 2026, which in relevant part: "challenges the provisions of the [October 5] Order (i) declaring that the automatic stay does not apply to the sale of the real property located at 1660 East 233rd Street, Bronx, New York; (ii) alternatively modifying the automatic stay pursuant to 11 U.S.C. section 362(d)(1) to permit Maria Ruggiero and/or Charles A. D'Agostino, the court-appointed Receiver, to sell that Property; and (iii) waiving Federal Rule of Bankruptcy Procedure 4001(a)(4) and giving the Order immediate effect." ECF No. 17 at 3 (Notice of Appeal). On October 8, 2026, Paul's Welding then filed the instant Motion for Stay Pending Appeal. ECF No. 18. On October 9, 2026, this Court

entered an administrative stay pending a hearing on Debtor's Motion for a Stay Pending Appeal (ECF No. 19); issued its Modified Bench Ruling (ECF No. 20); and set a briefing schedule on the Motion for a Stay Pending Appeal (ECF No. 19). A hearing was then held on October 19, 2026.[2] This Court now issues its written decision on the Motion for a Stay Pending Appeal, which denies in full the request in light of Debtor's failure to meet the required standard.

**DISCUSSION**

**Legal Standard**

Federal Rule of Bankruptcy Procedure 8007 governs an application for a stay pending appeal from a bankruptcy court's decision. "Ordinarily, a party must move first in the bankruptcy court for the following relief: (A) a stay of the bankruptcy court's judgment, order, or decree pending appeal . . . ." Fed. R. Bankr. P. 8007(a)(1). Whether to grant a stay of an order pending appeal lies within the sound discretion of the bankruptcy court. *In re Sabine Oil & Gas Corp*., 551 B.R. 132, 142 (Bankr. S.D.N.Y. 2016). To determine whether to grant a stay, bankruptcy courts consider the following four factors: (i) whether the movant has demonstrated a substantial possibility, although less than a likelihood, of success on appeal; (ii) whether the movant will suffer irreparable injury absent a stay; (iii) whether a party will suffer substantial injury if a stay is issued; and (iv) the public interests that may be affected. *In re Adelphia Commc'ns Corp.*, 361 B.R. 337, 346 (S.D.N.Y. 2007) (citing *Hirschfeld v. Bd. of Elections in the City of N.Y.*, 984 F.2d 35, 39 (2d Cir. 1993)); *see Nken v. Holder*, 556 U.S. 418, 434 (2009) (citation omitted).

A stay pending appeal under Rule 8007 is "the exception, not the rule," and the party seeking a stay "carries a heavy burden." *In re Carrington*, 698 F. Supp. 3d 659, 661 (S.D.N.Y. 2023)

[2] At the conclusion of the hearing, the Court granted the parties twenty-four hours to negotiate a possible consensual stay, and otherwise reserved judgment on the Motion for a Stay Pending Appeal. The parties were unable to reach an agreement on terms for a consensual stay.

(quotations omitted), *dismissing appeal*, Case Nos. 24-197, 23-7433, 2024 WL 3491202 (2d Cir. May 3, 2024). The "most critical" factors are a strong showing that appellant is likely to succeed on the merits and likely to suffer irreparable injury absent a stay. *See Nken*, 556 U.S. at 434. The Second Circuit has often treated the stay inquiry as a balancing of factors rather than a checkmark exercise as to each independent factor. *In re Adelphia*, 361 B.R. at 347; *see In re 473 W. End Realty Corp.*, 507 B.R. 496, 502 (Bankr. S.D.N.Y. 2014) (quoting the Sixth Circuit for the proposition that "the probability of success that must be demonstrated is inversely proportional to the amount of irreparable injury plaintiff will suffer absent the stay," in other words, more of one factor excuses less of the other). Here, Paul's Welding fails to establish any of the elements prerequisite to a stay pending appeal, including the critical showing of a likelihood of success on the merits or irreparable injury flowing from this Court's order absent a stay (and as opposed to any harm flowing from the Judgment of Divorce, which ordered the sale of the Commercial Marital Property in the first place).

**Substantial Possibility of Success on Appeal**

In order to establish its entitlement to a stay pending appeal, Paul's Welding was required to establish that this Court erred on ***both*** of its two principal holdings in the October 5 Order; error as to one is insufficient to establish the required substantial possibility of success on appeal. That is, the Debtor was first required to show that this Court erred as a matter of law in concluding that the Commercial Marital Property at issue is ***not*** property of the estate of Paul's Welding and therefore not subject to the automatic stay. The Debtor was next required to show that this Court abused its discretion in pronouncing its alternative holding: namely, that the Court abused its discretion in concluding that, even if the Commercial Marital Property were property of the Debtor's estate, cause existed to lift or modify the automatic stay to allow a sale of the property as

ordered by New York State Supreme Court.[3]

Here, the Debtor has argued in conclusory terms that the Commercial Marital Property at issue must be considered the property of Paul's Welding's bankruptcy estate. *See* Bench Ruling at 7–10. However, the record still does not bear out the Debtor's claim. Specifically, once the Judgment of Divorce was entered, ordering that the Commercial Marital Property must be sold to a third party and dividing the proceeds of that sale 70% to Ms. Ruggiero and 30% to Mr. Ruggiero, the interests of Ms. Ruggiero and Mr. Ruggiero vested. *See In re Greenwald*, 134 B.R. 729, 731 (Bankr. S.D.N.Y. 1991); *Musso v. Ostashko*, 468 F.3d 99, 105–08 (2d Cir. 2006). Because this occurred on May 26, 2026, ***before*** Paul's Welding filed its bankruptcy petition on September 10, 2026, the Supreme Court's distribution left Paul's Welding with zero equitable interest in the property. *See id.* Thus, the Paul's Welding bankruptcy estate has ***no*** equitable interest in the Commercial Marital Property, as the "estate's legal and equitable interests in property rise no higher than those of the debtor." *In re Rodgers*, 333 F.3d 64, 69 (2d Cir. 2006). The Debtor has presented no controlling case law holding otherwise.[4]

---

[3] Paul's Welding has also appealed the portion of the Court's ruling that waived the 14-day stay applicable to orders lifting the automatic stay; however, Debtor's counsel failed to object to a waiver of the 14-day stay, *see* ECF No. 7, or at the Lift-Stay Hearing. As a result, this issue has been waived. *E.g.*, *Pierre v. Aurora Com. Corp.*, 620 B.R. 210, 215 n.1 (S.D.N.Y. 2020) (issues not raised in bankruptcy court are "forfeited" on appeal to district court). In any event, the decision of whether or not to waive the 14-day stay rests firmly in the discretion of the Bankruptcy Court. *See, e.g.*, 1999 Advisory Committee Note to Bankruptcy Rule 4001 ("The court may, in its discretion, order that Rule 4001(a)(3) is not applicable so that the prevailing party may immediately enforce and implement the order granting relief from the automatic stay."). Paul's Welding has not identified any case law supporting a conclusion that the discretion was improvidently exercised and fourteen days has now lapsed, which appears to have mooted the issue.

[4] Furthermore, this Court's conclusion accords with Chief Judge Glenn's lift-stay order in the Ruggiero Bankruptcy. *See* Case No. 26-11536, ECF Nos. 17, 20 (Order Granting Relief from Automatic Stay). There, Chief Judge Glenn declined to extend the automatic stay to the Commercial Marital Property, finding it was "not property of [Mr. Ruggiero's] estate and as such, the automatic stay does not apply to the sale . . . ." *Id.* at 2. Chief Judge Glenn ordered that "nothing in this Order shall inhibit Charles A. D'Agostino, the Divorce Court Appointed Receiver of the Bronx Property, from continuing with actions in accordance with the terms and conditions of the Judgment of Divorce and any other order from the Divorce Court." *Id.* To be sure, Judge Glenn's holding that the Commercial Marital Property was not property of a ***different*** bankruptcy estate (that of this Debtor's principal) is not dispositive here. It nevertheless supports this Court's determination that this Debtor's interest in the property is insufficient to trigger the automatic stay, because Paul's Welding is one step further removed from the equity in the Commercial Marital Property, as it will receive zero proceeds from the sale, while Mr. Ruggiero will receive 30%.

Indeed, Paul's Welding concedes that it lacks any equitable interest in the Commercial Marital Property. *See* Mot. at 4 ("Section 541(d) distinguishes the estate's legal title from equitable interests the debtor does not hold. Nevertheless, that distinction does not itself extinguish the estate's ***retained legal interest***." (emphasis added)). The Debtor instead traces its interest in the Commercial Marital Property to the remedial order issued by the Supreme Court that put title for the property back into the name of Paul's Welding on account of what that court observed was fraud by the principal of Paul's Welding. Specifically, on August 28, 2026, the Supreme Court ordered that the title to the Commercial Marital Property be put ***back*** into the name of Paul's Welding to match the divorce decree, because in the intervening period, Mr. Ruggiero had made a "fraudulent attempt to transfer the property into a sham trust." ECF No. 7-1 (Order Affirming Title); ECF No. 5-1 at 39 (Decision After Trial). Disregarding that context, the Debtor now asserts that having legal title in its name and maintaining possession are interests that "constitute property of the estate protected by the automatic stay." Mot. at 4. But such an outcome would subvert both the Supreme Court's Judgment of Divorce and decades of case law recognizing that bare legal title, without an equitable interest, is ***not*** enough to invoke the protections of the automatic stay. *See Rodgers*, 333 F.3d at 68–69; *United States v. Whiting Pools, Inc.*, 462 U.S. 198, 204 n.8 (1983) (". . . Congress intended to exclude from the estate property of others in which the debtor had some minor interest such as a lien or ***bare legal title***" (emphasis added)). Indeed, at the October 19, 2026 hearing, counsel for Paul's Welding acknowledged explicitly that a debtor's holding legal title, without more, is not enough to pull property into the debtor's estate.

Finally, for the first time at the October 19 hearing, Paul's Welding raised a modified argument in support of its contention that the Commercial Marital Property is property of the estate. Specifically, Paul's Welding argued that the combination of a bare legal title and a

"possessory interest" in the Commercial Marital Property was sufficient to bring the Commercial Marital Property into the Debtor's estate—even recognizing that holding bare legal title, without a possessory interest, would have been insufficient.[5] Even if the argument had not been waived by the failure to brief it, it lacks merit. In the first instance, Debtor cannot identify its particular "possessory interest" with more specificity than to say the Debtor presently is operating out of the Commercial Marital Property—though it is unclear whether the Debtor is doing so permissibly. Further, the only case law the Debtor cites in support of its position actually compels the opposite conclusion. Specifically, at the October 19, 2026 hearing, counsel for Paul's Welding cited *In re Howard's Appliance Corp.*, 874 F.2d 88 (2d Cir. 1989), as its leading authority that bare title plus a possessory interest suffices to trigger the automatic stay. There, a creditor moved for relief from the automatic stay to enable it to proceed against the debtor's inventory (air conditioning units). *Id.* at 89. Relying on state law equitable doctrine, the bankruptcy court ruled that the creditor "was entitled to an order vacating the automatic stay or to adequate protection of its interest." *Id.* The district court reversed in part, "holding that equitable estoppel was ineffective against Howard's 'strong-arm' powers under 11 U.S.C. § 544." *Id.* at 89–90. The Second Circuit reversed the district court, holding that (1) "bare legal title" was ***not*** sufficient to constitute property of the estate, *id.* at 93 (quoting *Whiting Pools*, 462 U.S. at 204 n.8); (2) state law determined the estate's interest in the property, *id.*; and (3) the equities supported putting the property into a constructive trust in favor of the creditor. *Id.* at 94. The circuit court did not reach the section 544 issue, because "the constructive trust imposed [t]here attached prior to the filing of the Chapter 11 petition." *Id.* at 95. To the extent it is relevant here, *Howard's Appliance* ***supports*** this Court's reasoning, the Court

[5] When asked where in Debtor's brief this argument had been raised, Debtor stated that it was not briefed and therefore it has been waived. *Dobrer v. PennyMac Corp.*, 2018 WL 6437068, at *3 (E.D.N.Y. Dec. 7, 2018) (arguments raised for the first time at oral argument are waived).

having held (1) Paul's Welding holding bare legal title does not pull the Commercial Marital Property into the Debtor's estate, (2) Paul's Welding was divested of any equity interest by the prepetition Judgment of Divorce, and (3) the equities (and the Supreme Court's prior equitable distribution ruling) support lifting the stay.

Thus, the Debtor does not show a substantial possibility of success on appeal as to this Court's determination that the Commercial Marital Property is excluded from the bankruptcy estate of Paul's Welding's and therefore Paul's Welding may ***not*** invoke the automatic stay to block the court-ordered sale of the Commercial Marital Property. Regardless—even assuming that there was legal error in concluding that the Commercial Marital Property was ***not*** property of the bankruptcy estate of Paul's Welding—the Debtor has failed to furnish a basis for concluding that this Court abused its discretion and thereby committed reversable error when it concluded in the alternative that "cause" existed to lift the automatic stay to allow the sale of the Commercial Marital Property.

* * *

Whether or not cause exists to lift the automatic stay is analyzed under the twelve-factor *Sonnax* test. *In re Sonnax Indus.*, 907 F.2d 1280, 1286 (2d Cir. 1990). "Courts are not required to give each factor equal weight or consider every factor," *In re Sukhu*, 2022 WL 610310, at *6 (Bankr. S.D.N.Y. Mar. 1, 2022), and the Court's determination is reviewed for abuse of discretion. *Sonnax*, 907 F.2d at 1286. This standard of review is "highly deferential": the "Bankruptcy Court's decision should not be disturbed on appeal where the record shows that court considered the appropriate factors for determining whether cause for relief from the stay exists." *In re WorldCom, Inc.*, 2006 WL 2255071, at *2, *10 (S.D.N.Y. Aug. 4, 2006). Instead, the key question is only whether the lower court issued a reasoned determination. *See, e.g.*, *In re Broadway Realty I Co.,*

*LLC*, 2026 WL 2824056, at *2–3 (S.D.N.Y. Sept. 21, 2026). Here, on the record of the Hearing and as reiterated in the Modified Bench Ruling, the Court explained that *Sonnax* factors 1, 4, 7, 10, 11, and 12 weighed in favor of stay relief. *See* Bench Ruling at 11–15. Upon review of the Motion for Stay Pending Appeal, the Court can discern no objections to its reasoning in analyzing and applying *Sonnax* factors 1, 4, 7, 10, or 11. Instead, the Debtor argues reversal is required only because the Court "gave insufficient weight to the threatened destruction of a business that has operated at" the Commercial Marital Property, Mot. at 6, which only goes to *Sonnax* factor 12 (balance of harms).

While this Court is mindful of the potential impact of a sale of property on the business operating there, these arguments were already fully considered (and rejected)—***twice***—by the Supreme Court in adjudicating the issue of a sale of the Commercial Marital Property. First, in its Decision After Trial, despite taking seriously Mr. Ruggiero's contention that the sale of the Commercial Marital Property "would destroy the [Paul's Welding] business," the Supreme Court "direct[ed] the sale" of the Commercial Marital Property "to a neutral third-party buyer through a Court-appointed Receiver" due to Mr. Ruggiero's "constant attempts to thwart the Court's ability to value" the property. ECF No. 5-1 at 41–43 (Decision After Trial); *see also id.* ("The continued appointment of a Receiver to effectuate the sale is necessitated by [Mr. Ruggiero's] demonstrated pattern of obstruction."). While the Supreme Court recognized that the sale of the Commercial Marital Property would "likely" require Mr. Ruggiero "to temporarily suspend his business, his sole source of income" and "at his age, there is little likelihood of finding comparable new employment" for Mr. Ruggiero, it nevertheless ordered the Commercial Marital Property to be sold. *Id.* at 55. The Supreme Court considered these arguments for a second time when Mr. Ruggiero filed an order to show cause on August 26, 2026, asking that court to allow him to tender

$462,687.26 to Ms. Ruggiero in lieu of the forced sale of the Commercial Marital Property. ECF No. 5-1 at 85–86 (Order to Show Cause), 88–89 (Affirmation of Michael Ruggiero in Support of Order to Show Cause). In support of this request, Mr. Ruggiero argued that removal from the premises would "destroy" him financially. *Id.* at 88–89, 90–91. Even so, the Supreme Court declined to sign the order to show cause on August 27, 2026, characterizing the request for relief as a further "***delaying tactic***" and noting "an extensive history of dilatory maneuvers, obfuscation, and needless litigation" on the part of Mr. Ruggiero. ECF No. 5-1 at 102–03 (Decision and Order Declining to Sign Order to Show Cause) (emphasis added). That decision is especially significant because the Supreme Court rejected a materially identical alternative to what Paul's Welding seeks here: payment in kind to Ms. Ruggiero while the business remains in operation at the Commercial Marital Property. *See* Mot. at 6. The New York Supreme Court's holdings are entitled to collateral estoppel and this Court is not empowered to rewrite the orders issued by the state court. *See Sanders v. Sanders*, 2021 WL 4392053, at *8 (S.D.N.Y. Sept. 24, 2021) ("Courts often apply collateral estoppel to preclude subsequent litigation of property ownership when ownership was decided in a divorce proceeding.").

Moreover, the argument that Paul's Welding will suffer harm from the sale only goes to one of six applicable *Sonnax* factors (factor twelve) and is insufficient under the circumstances here to overcome the great weight of the other five. The twelfth factor examines the impact of the stay on the parties and the balance of harms. *See Sonnax* 907 F.2d at 1286. As a practical matter, lifting the stay here will result in consummation of the sale of the Commercial Marital Property and the eviction of the Debtor in connection therewith. *See* ECF No. 5-1 at 55 (Decision After Trial). The Debtor also identifies harm to the operation of the Paul's Welding business, including the possible "destruction" of the business if Debtor is forced to move. Mot. at 6. While such an

outcome represents a harm to the Debtor, it flows more directly from the decision of the Supreme Court, which made the determination to force a sale of the Commercial Marital Property through its Judgment of Divorce. Here, the Debtor essentially argues that this Court's decision to lift the stay imposes an additive harm on the Paul's Welding business, but the Debtor is mistaken: to the extent the Debtor compares a world in which a forced sale is not effectuated (in violation of the Supreme Court's decision) and one in such the Supreme Court's decision is enforced (as it must be), the supposed "harm" imposed by this Court is illusory. Conversely, Ms. Ruggiero faces a real and material harm should the stay remain in place—at least a delayed payment, if not also an aggregate reduction in her 70% share of the sale proceeds. This imbalance weighs in favor of lifting the stay. *See In re Hanna Jesionowska Practice LLC*, 2026 WL 1365120, at *13 (Bankr. S.D.N.Y. May 14, 2026) (lifting stay where "leaving the automatic stay in effect would unfairly harm the [creditor] by delaying its enforcement of a valid foreclosure judgment"). Because lifting the stay would simply clear the path for the already-decided result reached by the Supreme Court, which had expressly considered the harm to Debtor's business from a sale (including the specific risk that a sale might "destroy" that business), and keeping the stay in place would interpose a harm on Ms. Ruggiero, the balance of harms weighs in favor of lifting the stay.

As to the other five *Sonnax* factors that favor lifting the stay, the first factor inquires "whether relief would result in a partial or complete resolution of the issues," *Sonnax*, 907 F.2d at 1286, and here, allowing the sale of the Commercial Marital Property would completely resolve the dispute over the property. The Receiver would sell the Commercial Marital Property, with the proceeds directed 70% to Ms. Ruggiero and 30% to Mr. Ruggiero in accordance with the Judgment of Divorce, thereby completely resolving the claims to the Commercial Marital Property in this bankruptcy case. *See In re Taub*, 438 B.R. 39, 45–46 (Bankr. E.D.N.Y. 2010) (lifting automatic

stay where "resolution of [equitable distribution] issues [in state court] will resolve significant open issues in the Debtor's bankruptcy case").

The fourth factor asks "whether a specialized tribunal with the necessary expertise has been established to hear the cause of action," *Sonnax*, 907 F.2d at 1286, and here, the automatic stay should be lifted because the Supreme Court "has significant expertise in domestic relations and is well qualified to determine the respective property entitlements and obligations of the parties to a divorce action." *Taub*, 438 B.R. at 46–47. Indeed, "[e]quitable distribution . . . is an area where bankruptcy courts routinely, and appropriately, defer to state court for decision . . . .") *Id.* at 49 (citing cases). Moreover, the Supreme Court based its Decision After Trial and Judgment of Divorce on a six-month trial record, giving it unique insight into the intricacies of this case. Finally, as discussed above, the Decision After Trial and Judgment of Divorce are entitled to collateral estoppel effect. *See Sanders v. Sanders*, 2021 WL 4392053, at *8.

The seventh factor analyzes whether stay relief would prejudice other creditors, and here it would not. *See Sonnax*, 907 F.2d at 1286. The Supreme Court divided the sale proceeds of the Commercial Marital Property between Ms. Ruggiero and Mr. Ruggiero only, so there are no other creditors with a claim to the property. As such, this factor favors relief from the stay. *See, e.g.*, *Jesionowska*, 2026 WL 1365120, at *12 (lifting stay where "state court foreclosure [would] not prejudice the interests of any other creditor").

The tenth factor assesses whether "the interests of judicial economy and the expeditious and economical resolution of litigation" favor lifting the stay. *Sonnax*, 907 F.2d at 1286. The Supreme Court has heard, analyzed, and decided these issues by conducting a six-month trial, publishing a Decision After Trial, and issuing a Judgment of Divorce. It has greater expertise in matrimonial matters and greater familiarity with the particulars of this case. It therefore makes

sense for this Court to lift the stay and allow the Supreme Court to intervene, if necessary, as its Judgment of Divorce is carried out. *See Taub*, 438 B.R. at 48–49.

And the eleventh factor requires a court to review the stage of the underlying related proceedings, in particular "whether the parties are ready for trial in the other proceeding." *Sonnax* 907 F.2d at 1286. This case is beyond trial ready, as the trial has already occurred, a Decision After Trial has issued, the Judgment of Divorce has been entered, and the sale is now ready to be finalized. This weighs in favor of lifting the automatic stay. Additionally, the Judgment of Divorce likely has *res judicata* effect and thus precludes further litigation in the Supreme Court when the automatic stay is lifted. *See Boronow v. Boronow*, 519 N.E.2d 1375, 1378–79 (N.Y. 1988) (*res judicata* may apply to "ancillary issues" actually raised in prior divorce action); *Rakowski v. Rakowski*, 489 N.Y.S.2d 929, 931–33 (N.Y. App. Div. 1985) ("the fact that the issue . . . raised in the instant action could have been, but was not, raised in the prior matrimonial action . . . mandates a dismissal of the instant action."). In sum, the sale is likely to proceed expeditiously if the stay is lifted, favoring relief from the automatic stay.[6]

**Irreparable Injury to the Debtor**

To establish irreparable harm, as is required to warrant a stay pending appeal, the Debtor must demonstrate an injury that is neither remote nor speculative, but actual and imminent. *See In re Brown*, 2020 WL 3264057, at *6 (Bankr. S.D.N.Y. June 10, 2020). More specifically, it must "submit[] evidence to substantiate" a risk that it will suffer irreparable harm before the appeal can be resolved. *Id.* at *7; *see also 473 W. End Realty*, 507 B.R. at 502 ("the probability of success that

[6] Although lifting the stay may very well result in harm to the Debtor, this harm, standing alone, is insufficient to prohibit the lifting of the automatic stay. In fact, in every case, the very fact of lifting the automatic stay ***by definition*** risks some action ***adverse*** to a debtor because the stay is lifted only as against property of the debtor's estate, but the resulting harm to the Debtor alone is not a basis on which to deny recovery to a creditor. To hold otherwise would mean the automatic stay could never be lifted even where, as here, there is a reasoned basis for doing so. For these reasons, the Debtor cannot make the required merit-based showing warranting a stay pending appeal, and therefore the remaining three stay-related factors are analyzed only in brief below.

must be demonstrated is inversely proportional to the amount of irreparable injury plaintiff will suffer absent the stay").

Here, Paul's Welding has failed to establish the required strong showing of both ***imminent*** and ***irreparable*** harm flowing from the order issued by this Court. True, following the sale of the Commercial Marital Property, the Debtor will be evicted from its premises, which likely entails moving or selling equipment and temporarily (or potentially permanently) losing business. But the Debtor presently has not provided evidence of the imminence of this harm insofar as it has failed to establish a firm timetable for the eviction. *In re Adelphia*, 361 B.R. at 347 (harm "must be neither remote nor speculative, but actual and imminent"); *see In re Sabine Oil & Gas Corp.*, 548 B.R. 674, 682 (Bankr. S.D.N.Y. 2016) (providing that a "hypothetical and remote" harm is insufficient to constitute irreparable harm). Moreover, even crediting *arguendo* Debtor's arguments regarding actual and imminent harm from the sale of the Commercial Marital Property, the resulting harm is not clearly "irreparable" because it appears to be economic and economic injuries can be remedied with an award of monetary damages. *In re Taub*, 470 B.R. 273, 278 (E.D.N.Y. 2012) (denying stay pending appeal where "Debtor has not demonstrated any harm other than alleged loss of future rental income and the loss of the properties if they are sold"). That is, while the destruction of a business might constitute irreparable harm under certain circumstances, the record in this matter does not compel the conclusion that the Debtor's business would more likely than not be destroyed by a sale.[7] *See, e.g.*, *In re Mott*, 2025 WL 2348890, at *4 (Bankr. S.D.N.Y. Aug. 13, 2025) ("[A]ny potential monetary harm that may result from the denial of a

---

[7] Debtor submitted a Declaration of Michael Ruggiero (ECF No. 8) in opposition to the Motion to Lift the Stay, which identified generalized concerns that a sale of the Commercial Marital Property could "destroy" the Paul's Welding business; however, Ms. Ruggerio disputes the state and Debtor never sought to have Mr. Ruggiero's declaration admitted into evidence and Mr. Ruggiero was never made available for cross-examination. *See* Fed. R. Bank. P. 9014(d) ("A witness's testimony on a disputed material fact issue must be taken in the same manner as testimony in an adversary proceeding.").

stay, such as eviction from or sale of a debtor's property, are remediable and do not automatically constitute irreparable harm."). Among other things, the Debtor concedes that its equipment can be transported to new premises (along with the Debtor's customer list and goodwill), which undermines the Debtor's contention that its automotive welding business would be "destroyed" by the New York State Court order requiring the sale of the Commercial Marital Property. *See* Mot. at 8 ("Even if suitable premises and funding became available, relocation would require several weeks and could take longer depending on the work necessary to prepare the replacement premises."). Finally, irreparable harm is an equitable consideration and the equities do not favor a debtor which "has known that this eviction was reasonably imminent" for months "and apparently filed the bankruptcy only to forestall the eviction." *In re Mongiello*, 2024 WL 729865, at *1–3 (S.D.N.Y. Feb. 22, 2024) (holding this factor favored the creditor, the debtor's ex-wife, who was granted relief from the automatic stay to sell the condominium where the debtor resided).

**Substantial Injury to Other Parties**

There appears to be a substantial risk of injury to Maria Ruggiero if a stay pending appeal is granted. Among other things, further delays create a risk that the prospective buyer of the Commercial Marital Property (who has executed a sale contract to purchase the property for $1.4 million) would retract its offer if the sale and eviction proceedings are prolonged. As a result, if a stay pending appeal is granted, Ms. Ruggiero may suffer delayed payment and perhaps also an aggregate reduction in the dollar value of her 70% share of the net sale proceeds. Moreover, Ms. Ruggiero has already waited a considerable time to realize her share. The matrimonial court directed the sale in its Judgment of Divorce entered May 26, 2026, following a six-month matrimonial trial. Once the Receiver was moving toward a sale, the Debtor commenced this case on September 10, 2026. A stay would prolong the delay Ms. Ruggiero has endured further. This

counsels in favor of denying a stay pending appeal. *See In re 29 Brooklyn Ave. LLC*, 2015 WL 8602637, at *2 (Bankr. E.D.N.Y. Dec. 11, 2015) ("It is well settled precedent that the delay caused to creditors receiving their payments is also a significant harm in [*sic*] warranting denial of a stay.") (quoting *In re Fairmont Commc'ns Corp.*, 1993 WL 428710, at *4 (Bankr. S.D.N.Y. Oct. 12, 1993)).

**Public Interest**

Finally, the public interest favors denying a stay where, as here, the debtor has exhibited a pattern of delaying the sale of real property pursuant to a judgment of divorce. *See Mongiello*, 2024 WL 729865, at *4. The State of "New York has a strong interest in respecting the finality of divorce decrees and judgments." *In re Christensen*, 667 B.R. 770, 785 (Bankr. S.D.N.Y. 2025). That interest is especially pronounced here because the Supreme Court identified multiple instances of the Debtor and its principal attempting to circumvent its orders. *See* ECF No. 5-1 at 41–43 (Decision After Trial) ("The continued appointment of a Receiver to effectuate the sale is necessitated by [Mr. Ruggiero's] demonstrated pattern of obstruction. He refused to pay for the neutral appraisal, obstructed an updated appraisal, and attempted to covertly and fraudulently transfer the property out of the marital estate by recording a backdated deed purporting to place the property in a trust."); *id.* at 102-03 (August 27, 2026 decision denying order to show cause, in which the Supreme Court characterized Mr. Ruggiero's request for relief as a "delaying tactic" and noted "an extensive history of dilatory maneuvers, obfuscation, and needless litigation").

**CONCLUSION**

For the reasons stated above, the Motion for Stay Pending Appeal is **DENIED**, and the administrative stay (ECF No. 19), extended on the record at the hearing held on October 19, 2026, is hereby dissolved and no longer of any force or effect.

Date: October 20, 2026
New York, New York

/s/ Shireen A. Barday

**HONORABLE SHIREEN A. BARDAY**
**UNITED STATES BANKRUPTCY JUDGE**